PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAMÓN QUIÑONES MARTÍNEZ, Defendant and Appellant.

No. 4723.   Argued March 29, 1932.—Decided April 8, 1932.

*José Veray, Jr.,* for appellant.   *E. Díaz Viera, Assistant Fiscal,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Policeman José Rivera filed a complaint against Ramón Quiñones charging that the latter "in Aguadilla, P. R. . . . then and there, unlawfully, wilfully, and maliciously violated the provisions of section 1 of the Act regulating the use of motor vehicles on the public roads of Puerto Rico, in that he operated on said road a Chrysler automobile, license-plate No. P-1102, which is a public-service vehicle belonging to Tomás Pellot, when he only held operator's badge and license No. 37502, knowing that in order to operate such public-service vehicles he must necessarily hold a chauffeur's badge or license."

On appeal, the District Court of Aguadilla found the defendant guilty and sentenced him to pay a fine of one dollar.  Feeling aggrieved, Quiñones took an appeal to this Supreme Court.

He maintains in his brief that the facts charged against him in the complaint do not constitute a public offense, and that the court erred in weighing the evidence.

We know the complaint.  The evidence for the prosecution consisted of the testimony of the complaining police-

man. In brief, he stated that on the night of October 9th, the defendant Quiñones was driving around the plaza of Aguadilla an automobile bearing a public-service number plate. Two persons sat next to him. No one occupied the rear seat. The witness could not positively state whether Quiñones collected any fare from said persons. That Quiñones had an operator's badge, but none as a chauffeur. That witness had therefore filed another complaint against Quiñones for carrying two passengers, for which charge Quiñones was acquitted.

The evidence for the defense consisted of the testimony of José Beléndez and of the defendant himself. In short, they testified to the effect that they and Miguel Acevedo, who were employed in a bank, habitually hired a vehicle to go driving on Sundays, and that they did so on the night of October 9th, when Quiñones, the driver, was accused by the policeman.

Thus, the ultimate fact is the following: A public-service vehicle is hired for private use by three persons and operated on the city streets by one of such persons who had only an operator's license. Does this fact constitute a violation of the Motor Vehicle Act and therefore subject to prosecution and punishment as a public offense? Let us examine the law in force for a proper answer to that question.

The applicable law is Act No. 76 of 1916 (Session Laws, p. 144) entitled "An Act to regulate the operation of motor vehicles in Porto Rico, and for other purposes," as amended by Act No. 55 of 1921 (p. 422), by Act No. 93 of 1925 (p. 756) and by Act No. 9 of 1926 (p. 22). Section 1 of the Act, as amended in 1921, provides:

"Section 1.—That the term 'Operator' in Section 1 of 'An Act to regulate the operation of motor vehicles in Porto Rico, and for other purposes,' approved April 13, 1916, is hereby amended as follows:

" 'Operator' shall mean any person who, without being a chauffer, operates a motor vehicle not for the public service.

" 'Public Service Automobile.'—Public Service Automobile for the purpose of this Act, shall mean any motor vehicle which, for compensation or pay, shall engage in the transportation of passengers, merchandise or materials of any kind, and the said vehicles shall not operate without paying the additional fee hereinafter provided for automobiles acting as public carriers."

A similar case was brought before this Court prior to the enactment of said amendment, when the definition of the term "operator" stood thus: " 'Operator' shall mean any person who, without being a chauffeur, operates a motor vehicle"; and it was decided by this Court as follows:

"The appellant contends that 'an operator with a license as such requires a chauffeur's license in order to operate and drive a motor vehicle used in the public service,' and that in not so holding the district court erred and its judgment should be reversed.

"Let us examine Act No. 75 of 1916, which governs the matter. Section 1 defines *chauffeur* as 'any person who is paid for operating a motor vehicle,' and *operator* as 'any person who operates a motor vehicle, other than a *chauffeur.*' From these definitions the appellant deduces that in order that a person who drives an automobile may be authorized to receive fares from passengers in a public-service vehicle he must necessarily hold a license as chauffeur, a license as operator not being sufficient.

"In order properly to dispose of the question raised it is necessary to study the act more closely. Only persons who hold licenses as chauffeurs or operators can drive motor vehicles in Porto Rico. That is obvious. How are these licenses obtained? By means of an application accompanied by a sworn medical certificate clearly stating that the applicant is physically and mentally fitted to operate such a vehicle, after undergoing a thorough examination to test his practical knowledge and ability and after the payment of the sum of five dollars. (Act No. 75 secs. 5 and 10.) The personal qualifications and the fees payable to the Treasury of Porto Rico are, therefore, the same for obtaining either license. What the law requires for the operation of a motor vehicle is a demonstration of the necessary ability and the payment of the sum fixed, no distinction being made between public-service vehicles and private vehicles.

"Where is the distinction made? In section 10 of the said Act No. 75 of 1916. In establishing the schedule of fees to be paid a clear distinction is made between private automobiles, which are

taxed at only fifty cents or one dollar the horse-power per annum, and public-service vehicles, which are taxed at $20 annually in addition to the other prescribed fees when operating in a single municipality, and $30 when operating throughout the Island.

"This being the case, the pay to which the statute refers in defining the word 'chauffeur' cannot possibly mean the fares which a person driving an automobile receives from the passengers, but must be confined to its proper meaning; that is, the salary or lump or proportionate sum that he is paid for the work done by him in driving a motor vehicle. Interpreting the act in this sense, we do not see why the owner of a motor vehicle may not drive it himself and collect the fares after he has proved his ability to operate it and obtained the necessary license without any restriction by paying the statutory fees together with the other fees prescribed by law for acting as a public carrier." *Arenas et al.* v. *Commissioner of Interior,* 26 P.R.R. 675.

The provisions of the law regarding examination and payment of fees have not been substantially changed by the amendments enacted after the decision of this Court in the case above cited.

We are unable to understand what was the purpose sought by the Legislature in amending the definition of the word "operator" as it did. We have examined the Act in its entirety and we cannot find the reason therefor nor have we been able to discover it in considering the liability for injuries caused to other persons due to the negligent operation of a vehicle. Neither the chauffeur nor the operator is required to give bond for such cases. Perhaps the state of the law and the jurisprudence in Puerto Rico—sections 803 and 805 of the Civil Code, and *Vélez* v. *Llavina,* 18 P.R.R. 634—might be the reason, although section 17 of the original law of 1916 has not been amended in any particular.

But, be it as it may, we find that according to the law in force governing the matter when the defendant was granted an operator's license, he was authorized to drive only a "motor vehicle not for the public service" and as the one he operated was a public service vehicle, the violation is

manifest. The attendant circumstances explain the minimum penalty imposed by the trial court.

The judgment appealed from must be affirmed and the appeal dismissed.

Mr. Justice Wolf took no part in the decision of this case.